IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) 2:18-cr-00188 |
| v. | ) 2:19-cr-00118 |
| | ) |
| PAUL HOOVER, | ) Chief Judge Mark R. Hornak |
| | ) |
| Defendant. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Defendant Paul Hoover is currently serving a 136-month in-custody sentence for conspiracy to commit drug distribution, money laundering, and health care fraud, and making a false statement regarding social security benefits. (ECF No. 131.)[1] The in-custody sentence is to be followed by three (3) years of supervised release. (*Id*.) Mr. Hoover currently resides at FCI Morgantown, and according to the Bureau of Prisons ("BOP") inmate locator, his scheduled release date is March 20, 2027. He has been incarcerated since July 2018 and has served less than 25% of his sentence. (*See* ECF No. 92, at 5.)

Mr. Hoover moves this Court for a Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), stating that numerous health conditions, combined with the heightened risk of contracting COVID-19 while in custody, warrant compassionate release. He further contends that early release is supported by the § 3553(a) factors.

---

[1] Mr. Hoover was sentenced to a term of imprisonment of 120 months at Docket No. 18-188 and a consecutive term of imprisonment of sixteen (16) months at Docket No. 19-118. Unless stated otherwise, all ECF filings cited throughout the Opinion refer to Docket No. 18-188, which is where Mr. Hoover filed the relevant Motion for Compassionate Release.

1

While the Court concludes that Mr. Hoover's Motion is properly before it and that his medical conditions would be classified as rising to an "extraordinary and compelling" level, release is not warranted on the record before the Court. Upon consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), a reduction of Mr. Hoover's sentence is inappropriate at this time. Accordingly, the Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) at ECF No. 207 is DENIED without prejudice subject to its reassertion should circumstances warrant.

## I. BACKGROUND

On May 10, 2019, Mr. Hoover entered a guilty plea to one (1) count of conspiracy to distribute controlled substances, one (1) count of conspiracy to commit health care fraud, one (1) count of conspiracy to launder money, and one (1) count of a false statement regarding social security benefits. (ECF No. 77; Docket No. 19-118, ECF No. 8.) This Court imposed a total sentence of 136 months of imprisonment and three (3) years of supervised release. (ECF No. 131.) As of the date of this Opinion, Mr. Hoover has served approximately thirty-one (31) months of actual incarceration.

Mr. Hoover submitted multiple administrative requests for compassionate release, doing so most recently on September 23, 2020. (ECF No. 207-2, at 4.) The Warden denied Mr. Hoover's administrative request on October 1, 2020. (*Id.*) The denial stated that Mr. Hoover's "concerns about being potentially exposed to, or possibly contracting, COVID-19" did not warrant early release. (*Id.*)

On December 1, 2020, Mr. Hoover filed a Motion for Compassionate Release in this Court. (ECF No. 207.) The Motion was supplemented by medical records filed under seal. (ECF Nos. 210, 216.) The Motion argues that Mr. Hoover has multimorbidity medical conditions that, in the

context of his custodial detention and COVID-19, qualify as "extraordinary and compelling" reasons warranting a sentence reduction. (*See id.*) Specifically, Mr. Hoover points to chronic health conditions, including hypertension, high cholesterol, abdominal pain, a history of deep vein thrombosis and pulmonary embolism, and borderline obesity. (*Id.* at 5–6.) Mr. Hoover also argues that consideration of the § 3553(a) factors support release, primarily because he has been committed to rehabilitation in prison and he can no longer commit the type of offense to which he pled guilty because he lost his medical license. (*Id.* at 9.)

In response, the Government concedes that Mr. Hoover administratively exhausted his request and that the record establishes the existence of "extraordinary and compelling reasons" that would authorize his release. (ECF No. 214, at 2–3.) However, the Government contends that compassionate release is not appropriate under the § 3553(a) factors, emphasizing the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the crime, and the need for deterrence. (*Id.* at 5–6.)

The Court held a hearing on the Motion on January 20, 2021. (ECF No. 225.) Based on information that arose at the hearing regarding Mr. Hoover's latest health status, the Court gave the parties additional time to supplement the evidentiary record. (ECF No. 226.) On February 1, 2021, Mr. Hoover filed a supplemental filing and additional sealed medical records. (ECF Nos. 227, 228.) The Government responded on February 5, 2021. (ECF No. 230.) The matter is now ripe for disposition.

## II.     LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally

may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

### III. DISCUSSION

After considering the relevant factors, the Court finds that Mr. Hoover's Motion is properly before it. Additionally, the Court finds that the combination of Mr. Hoover's medical conditions, as exacerbated by his particularized risk for severe illness should he contract the COVID-19 virus, would be classified as rising to an "extraordinary and compelling" level. However, in considering the § 3553(a) factors, the Court concludes that a reduction of Mr. Hoover's sentence would be inconsistent with the purposes of sentencing, and as such, compassionate release is inappropriate at this time.

#### A. Administrative Exhaustion

In order to consider the merits of the Defendant's Motion, the Court must first determine whether Mr. Hoover has complied with 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement. Prior to petitioning a court for relief under § 3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust the BOP's administrative remedies, or (2) wait thirty (30) days from the date the administrative request was filed with the warden. § 3582(c)(1)(A). The Third Circuit has confirmed that either of

§ 3582(c)(1)(A)'s options (acting independently) are sufficient to satisfy the exhaustion requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (rejecting the argument that a defendant is required to completely exhaust the administrative remedy process if the warden denies a defendant's request within thirty (30) days of receiving it, primarily because "the statute states that the defendant may file the motion [before a district court] thirty days after the warden receives his request").

The Court concludes that Mr. Hoover has satisfied § 3582(c)(1)(A)'s exhaustion requirement based on the "thirty-day option" because the BOP has had more than thirty (30) days to consider the claims Mr. Hoover is now attempting to bring before this Court. Mr. Hoover submitted an administrative request for release to the Warden of FCI Morgantown on September 23, 2020. (ECF No. 207-2, at 4.) The Warden denied the request on October 1, 2020. (*Id.*) In denying the request, the Warden stated that Mr. Hoover's "concerns about being potentially exposed to, or possibly contracting, COVID-19" did not warrant early release. (*Id.*) Mr. Hoover's Unit Manager also reviewed Mr. Hoover's request and examined Mr. Hoover's medical conditions as set forth in the Pre-Sentence Investigation Report. (*Id.* at 3.) The Government does not contest administrative exhaustion. (ECF No. 214, at 2–3.) The Court finds that the BOP has had more than thirty (30) days to consider Mr. Hoover's overall medical condition, including consideration of those concerns in the context of the COVID-19 pandemic. Mr. Hoover has exhausted his BOP administrative obligations, and the Court will proceed accordingly.

### B.  "Extraordinary and Compelling" Reasons

Next, the Court must determine whether Mr. Hoover's medical conditions, as exacerbated by the ongoing COVID-19 pandemic, rise to an "extraordinary and compelling" level, such that consideration of release from prison would be permitted by § 3582(c)(1)(A)(i).

Section 3582 does not define the phrase "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i), but has not updated the applicable Policy Statement, found in the U.S. Sentencing Guidelines Manual ("the Guidelines"), since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. Apr. 1, 2020).

Despite the fact that the relevant portions of the Guidelines predate the passage of the applicable provisions of the First Step Act, and would be advisory in any event, they do provide some initial benchmarks for the Court's consideration. *See id.* at 397 ("[A] majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019))). For example, the Policy Statement provides that a defendant may show "extraordinary and compelling" reasons for compassionate release based on the defendant's medical condition, age, family circumstances, or "other reasons." § 1B1.13, cmt. n.(1).

Particular to Mr. Hoover's situation, the Application Notes to § 1B1.13 of the Guidelines speak to conditions which would support compassionate release in the form of non-terminal medical conditions that can rise to an "extraordinary and compelling" level. The Sentencing Commission's Policy Statement suggests that non-terminal medical conditions may constitute extraordinary and compelling reasons if "a defendant is suffering from a serious physical or

medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, cmt. n.(1)(A)(ii).

Here, the Court finds that the combination of Mr. Hoover's medical conditions, paired with the additional risks that he faces due to the COVID-19 pandemic, would rise to an "extraordinary and compelling" level pursuant to the "non-terminal" option. Mr. Hoover moves for release based on multiple health conditions. Mr. Hoover has hypertension and a body mass index ("BMI") on the borderline of overweight and obese. (*See* ECF No. 210, at 22, 71, 114, 120; ECF No. 228, at 7.) A BMI of 30.0 or higher qualifies as "obese," and a BMI of lower than 30.0 is classified as "overweight." *See About Adult BMI*, Ctrs. for Disease Control & Prevention (last updated Sept. 17, 2020), https://bit.ly/2HuhvIL. When the parties submitted their original filings, they recognized that Mr. Hoover's BMI was then on the borderline, just under 30.0. (*See* ECF No. 207, at 2; ECF No. 214, at 4.) Based on Mr. Hoover's most recent recorded weight and height, it appears to the Court that Mr. Hoover's BMI has risen to precisely 30.0. (*See* ECF No. 228, at 7; ECF No. 210, at 114.). This means that Mr. Hoover reaches exactly the threshold for "obesity."

Mr. Hoover also cites to numerous other health concerns, including high cholesterol, a history of deep vein thrombosis and pulmonary embolism, a seizure disorder, hydrocele, nerve damage, bloodwork potentially suggestive of kidney disease, and abdominal pain. (*See* ECF No. 207, at 1–2; ECF No. 215, at 1; *see also* ECF No. 210, at 3, 65, 127, 159–160, 237, 424, 428.) Some of these conditions were outlined in the Pre-Sentence Investigation Report. (*See* ECF No. 92, at 15.) In addition, Mr. Hoover mentions a family history of heart disease, kidney disease, and asthma. (*See* ECF No. 207, at 3; *see also* ECF No. 210, at 93, 114.). The record does not reflect that the underlying conditions noted are transitory in nature, notwithstanding that in some cases it

appears that the symptoms of them may well be. Thus, for these purposes, the Court will treat them as unlikely to be ones from which Mr. Hoover would "recover."

Mr. Hoover further argues that his abdominal pain has been recognized by a medical provider as presumptive Crohn's disease that will "almost certainly require immunosuppressive therapy."[2] (ECF No. 207, at 2.) The medical records originally filed with the Court show that Mr. Hoover underwent lab work that was "suggestive" of Crohn's. (*See, e.g.*, ECF No. 210, at 16.) At the hearing, Mr. Hoover testified that his doctor orally gave him a definitive operating diagnosis of Crohn's disease, but that the doctor wanted to confer with the surgeon who had first identified signs of inflammation. No medical records, however, establish that Mr. Hoover has been definitively diagnosed with Crohn's disease, that he is taking any medication to treat Crohn's, or that he has been prescribed immunosuppressant medication.[3] To the contrary, according to the supplemental medical records filed with the Court post-hearing, the only indication of Crohn's disease is the earlier lab work that was "suggestive, but not definitive of inflammatory disease." (ECF No 228, at 5 ("there does not seem to be any [other] indication of Crohn's disease").) Further, the supplemental medical records show that Mr. Hoover's doctor was "quite reluctant to place [Mr. Hoover] on any medication like [an immunosuppressant] without more evidence that [he] has Crohn's." (*Id.*)

---

[2] Crohn's disease is a "type of inflammatory bowel disease" that "causes inflammation of [a person's] digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition." *See Crohn's disease*, Mayo Clinic (last updated Oct. 13, 2020), tinyurl.com/44j2hb4w. Though there is no cure for Crohn's disease, there are various types of treatment to reduce inflammation and limit long-term complications. *See id*. One type of treatment is the use of immunosuppressant drugs that "act by blocking functions of the immune system." *See id.* Adults taking immune weakening medicines "might be at an increased risk for severe illness from the virus that causes COVID-19." *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (last updated Feb. 3, 2021), https://bit.ly/3iZBI5M.

[3] In September 2020, Mr. Hoover was prescribed prednisone, which is an anti-inflammatory steroid that can be used to treat the symptoms of Crohn's disease. Prednisone is not an immunosuppressant drug. In any event, Mr. Hoover is not currently prescribed prednisone. According to the medical records, Mr. Hoover had an allergic reaction to that drug, and it is now listed as one of his allergies. (*See* ECF No. 210, at 154–55.)

8

Finally, Mr. Hoover raises concerns about the medical care that he is receiving while incarcerated. Mr. Hoover contends that FCI Morgantown "has not demonstrated the capacity to diagnose and treat" his health conditions and that he "is forced to make repeated requests for assistance, is in constant pain, and feels constantly underserved." (ECF No. 207, at 3, 6.) In particular, he points to delayed responses from the FCI Morgantown medical staff. (*Id.* at 6–7.) Mr. Hoover testified that it usually takes one (1) to two (2) weeks to see a physician inside the facility, although the record does reflect that he is seen more frequently by other health care providers in the FCI Morgantown health unit. Mr. Hoover also complains about the delayed scheduling of medical treatments, especially those requiring outside intervention. (*Id.*) At the hearing, Mr. Hoover testified that from his perspective, it generally takes approximately eight (8) months to receive requested outside medical care. As an example, Mr. Hoover explained that he had a post-operation medical appointment in April 2020, but he was not able to see a related specialist until December 2020. (*See* ECF No. 210, at 49; ECF No. 228, at 15.) Apart from that instance, the medical records generally reflect shorter periods of delay. For example, last summer, Mr. Hoover received a recommended colonoscopy within four (4) months of the referral. (*See* ECF No. 210, at 37–40, 49; ECF No. 210-1.) Other outside appointments and consultations appear to have been scheduled and completed within weeks of the request. (*See* ECF No. 228, at 37.) Mr. Hoover is also concerned about the risk of medical misdiagnoses, citing as an example what turned out to be the unnecessary removal of his appendix, which occurred when an outside surgeon was attempting to treat Mr. Hoover's unexplained, severe abdominal pain. (*See* ECF No. 207, at 3; ECF No. 210, at 366.)

On balance, the Court concludes that the COVID-19 pandemic has to a degree diminished Mr. Hoover's ability to care for himself while in custody. The Court notes the Government's

position that, in the context of the COVID-19 pandemic, Mr. Hoover has serious medical conditions that constitute an "extraordinary and compelling" reason for release. (*See* ECF No. 214, at 4.) Mr. Hoover is afflicted with multiple medical conditions, some of which may place him at a higher risk of severe illness if he were to contract COVID-19. Mr. Hoover has hypertension and appears to have a BMI of 30.0, which is classified as "obese." The Centers for Disease Control and Prevention ("CDC") recognizes that hypertension "might" put a person at risk of contracting severe illness from the coronavirus. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (last updated Feb. 3, 2021), https://bit.ly/3iZBI5M. And, according to the CDC, people with obesity "are at an increased risk of severe illness" from coronavirus. *See id.* The Court does note, though, that Mr. Hoover's BMI is at the very bottom of the "obese" BMI range.

The Court acknowledges Mr. Hoover's self-described frustrations with the care he is receiving at FCI Morgantown. In fact, in many ways, Mr. Hoover's primary complaints in support of his Motion go to his dissatisfaction with the scope and speed of his medical care. However, it appears to the Court that Mr. Hoover is generally receiving adequate care. Though there has been some delay in receiving recommended treatment, it is not as if the BOP medical staff have ignored his medical needs or requests. The medical records indicate that Mr. Hoover regularly receives his prescribed medications and is seen by health services on at least a weekly basis. He also has been seen and treated by medical providers outside of the BOP facility. But it is also noteworthy that Mr. Hoover's health conditions cause him many complaints, some of which include his reports of experiencing substantial pain. As a result, Mr. Hoover's health seems to require ongoing medical attention (or at least some sort of response from the medical unit) and occasional medical treatment from outside of the prison facility. Any strain that COVID-19 has put on FCI Morgantown's health

services, including the ability to schedule outside medical appointments, to some degree diminishes Mr. Hoover's ability to care for himself while incarcerated.

Considering the entire circumstances as presented to the Court, the Court concludes that Mr. Hoover sufficiently differentiates his medical situation from others so as to rise to the level of "extraordinary and compelling." But as noted, the Court also concludes that on the continuum of cases that would meet that mark, in light of the medical care Mr. Hoover is receiving and the nature of his conditions, Mr. Hoover's medical situation is at the more modest end of that scale. Ultimately, however, whether there are extraordinary and compelling circumstances present or not does not resolve Mr. Hoover's Motion, because, by law, that is not the end of the Court's analysis.

### C. The § 3553(a) Factors

Even though the Court finds that there is an "extraordinary and compelling" reason sufficient to authorize Mr. Hoover's release, it must also consider whether release is appropriate in light of the factors set forth in § 3553(a). Specifically, "in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D.N.Y. Apr. 22, 2020) (citation omitted).

The Third Circuit affirmed that the determination of "whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the [district court]." *United States v. Jones*, No. 12-cr-38, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. June 26, 2020)). That discretion includes the district court's authority to consider the length

of the defendant's original custodial sentence, including the portions served and remaining, when weighing the § 3553(a) factors. *Pawlowski*, 967 F.3d at 330–31.

Here, the Court concludes that any reduction of Mr. Hoover's sentence would be inappropriate at this time because the § 3553(a) factors continue to fully support the sentence that this Court originally imposed. In particular, the Court finds that at least two (2) of the § 3553(a) factors substantially weigh against Mr. Hoover's release: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed to reflect the seriousness of the offense.

Based on the record before it, the Court concludes that release of Mr. Hoover at this time would materially undermine the original purposes of sentencing. First, Mr. Hoover has served less than 25% of his in-custody sentence of 136 months. He has a significant amount of time left on his sentence, and his expected release date is not until March 20, 2027. Second, the crimes that Mr. Hoover is convicted of are very serious, and his conduct in engaging in them was by every measure calculated and destructive. Prior to his criminal convictions, Mr. Hoover was a medical doctor. But instead of using his medical license to provide people with legitimate medical care, Mr. Hoover used his license to illegally prey on and feed the drug addictions of dozens of people, which also had the effect of fueling the opioid epidemic in this District. Mr. Hoover orchestrated an ongoing "pill mill" operation in which he periodically flew from California to Western Pennsylvania to issue unneeded and unwarranted prescriptions to throngs of people dependent on opioid drugs. He took in large amounts of currency while doing so, engaged in a conspiracy to commit health care fraud, laundered large volumes of cash through purchases of coins and precious metals and real estate, stuffed the proceeds of his scheme in safe deposit boxes at multiple banks in California, and formulated his own fraudulent Social Security disability claim, one based on his

own lies and related doctor-shopping activities. The seriousness of Mr. Hoover's criminal conduct in this case is difficult to overstate and is reflected by and in the original sentence imposed. In the Court's view, the remainder of the sentence is necessary to reflect that seriousness and to provide just punishment for the offenses.

The current record before the Court shows that Mr. Hoover's medical conditions are not so urgent and serious so as to counterbalance the § 3553(a) sentencing factors. Though Mr. Hoover suffers from multiple medical issues, most of the conditions do not appear to materially exacerbate his risk of serious illness from COVID-19. And despite Mr. Hoover's assertions that he will be prescribed immunosuppressant medication for Crohn's disease in the future, it is undisputed that he has not been prescribed such medicine at this time.[4] In fact, his doctor was "reluctant" to prescribe Mr. Hoover that type of medication. (*See* ECF No. 228, at 5.) As the Government notes, "there is nothing barring the defendant from raising the motion again, should he actually be placed on immunosuppressant medication and should the pandemic continue unabated." (ECF No. 230, at 2.) In addition, it is reported that vaccination efforts are beginning to get underway at FCI Morgantown. According to the BOP website, as of the date this Opinion, eighty-seven (87) staff and twelve (12) inmates at FCI Morgantown are fully vaccinated. And according to the BOP guidelines, an inmate with a BMI in the "obese" range is prioritized for vaccination as a Priority Level 2 inmate. *See COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), tinyurl.com/1x8xn9m4. Mr. Hoover testified at the hearing that he knew that vaccinations at FCI Morgantown were ongoing and that he could potentially become a priority

---

[4] At the hearing, the Government argued that the Court should not trust the veracity of Mr. Hoover's subjective medical complaints and should give little weight to Mr. Hoover's testimony, given the nature of Mr. Hoover's underlying criminal conduct in this case, which, as discussed, involved health care fraud, doctor shopping, and fabricating his own disability. The Court need not resolve that point of contention for all purposes here and now. But, as noted, it does appear to the Court that Mr. Hoover has exaggerated the nature of the actual Crohn's diagnosis, as well as the extent to which his current medical conditions will materially increase his risk of serious illness should he contract COVID-19.

inmate. Finally, by Mr. Hoover's own account, he has benefitted from the BOP's programming, even during the pandemic. (*See* ECF No. 207, at 9.) Though some programming has paused, Mr. Hoover testified that he has maintained involvement in the Residential Drug Abuse Program and has acted as a GED teacher throughout the duration of the pandemic.

In sum, Mr. Hoover's medical conditions on this record do not compel or counsel a reduction in his sentence, and the seriousness of his criminal offenses and the amount of time left on his sentence support the original sentence imposed.

## IV. CONCLUSION

The Court has considered the relevant factors set forth in § 3582(c), as well as the applicable policy statements issued by the Sentencing Commission and the factors set forth in § 3553(a). The Court finds that Mr. Hoover's Motion is properly before it and that his medical conditions would be classified as rising to an "extraordinary and compelling" level in light of the COVID-19 pandemic. However, the record before the Court also indicates that sentence reduction in the form of compassionate release is inappropriate at this time because the remainder of Mr. Hoover's incarceration remains necessary to fulfill the purposes of his sentence. Accordingly, the Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) at ECF No. 207 is hereby DENIED without prejudice subject to its reassertion should circumstances warrant.

An appropriate Order will issue.

s/ Mark R. Hornak  
Mark R. Hornak  
Chief United States District Judge

Dated: February 11, 2021  
cc: All counsel of record