## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | 2:18-cr-00188 |
| v. | ) | 2:19-cr-00118 |
| | ) | |
| PAUL HOOVER, | ) | Chief Judge Mark R. Hornak |
| | ) | |
| Defendant. | ) | |

### OPINION

**Mark R. Hornak, Chief United States District Judge**

Defendant Paul Hoover is currently serving a 136-month in-custody sentence for conspiracy to commit drug distribution, money laundering, and health care fraud, and making a false statement regarding social security benefits. (ECF No. 131.)[1] The in-custody sentence is to be followed by three (3) years of supervised release. (*Id.*) Mr. Hoover currently resides at FCI Morgantown, and according to the Bureau of Prisons ("BOP") inmate locator, his scheduled release date is March 20, 2027. He has been incarcerated since July 2018 and currently has served less than 50% of his sentence. (*See* ECF No. 92, at 5.)

Mr. Hoover again moves this Court for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), based on his numerous stated health conditions, combined with the heightened risk of contracting COVID-19 while in custody. He also contends that the § 3553(a) factors support release.

---

[1] Mr. Hoover was sentenced to a term of imprisonment of 120 months at Docket No. 18-188 and a consecutive term of imprisonment of sixteen (16) months at Docket No. 19-118. Unless stated otherwise, all ECF filings cited throughout the Opinion refer to Docket No. 18-188, which is where Mr. Hoover filed the relevant Renewed Motion for Compassionate Release.

First, the Court concludes that Mr. Hoover's Motion as to some of his medical conditions have not (as discrete matters) been fully exhausted because Mr. Hoover has not filed a request to the BOP for release specifically discussing individually these conditions. However, since the Court determines that a defendant is not required to restart the process of exhaustion every time his health condition deteriorates and because the BOP previously had the opportunity to review Mr. Hoover's medical situation based on his prior administrative request from September of 2020, and it continues to monitor his health condition, the Court is satisfied that it can review and consider Mr. Hoover's Motion and all stated reasons for release. Further, the Court again determines that Mr. Hoover's medical conditions may be classified as rising to an "extraordinary and compelling" level. However, release is not warranted based on the record before the Court primarily because, based upon consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), a reduction of Mr. Hoover's sentence remains inappropriate at this time. Accordingly, the Defendant's Renewed Motion for Compassionate Release and subsequent filings related to such Motion at ECF Nos. 267, 275, 282, 291, and 306 are DENIED without prejudice subject to reassertion should circumstances warrant.

Mr. Hoover also filed three *pro se* Motions relating to his request for release: a Motion to Compel Discovery at ECF No. 268, a Motion for Special Relief to Serve Other Parties at ECF No. 269, and a Motion for the Court to Clarify Due Process Issues at ECF No. 287. For the reasons stated in this Opinion these Motions are DISMISSED as MOOT without prejudice.

## I.    BACKGROUND

On May 10, 2019, Mr. Hoover entered a guilty plea to one (1) count of conspiracy to distribute controlled substances, one (1) count of conspiracy to commit health care fraud, one (1) count of conspiracy to launder money, and one (1) count of a false statement regarding social

security benefits. (ECF No. 77; Docket No. 19-118, ECF No. 8.) This Court imposed a total sentence of 136 months of imprisonment and three (3) years of supervised release. (ECF No. 131.) As of the date of this Opinion, Mr. Hoover has served approximately forty-seven (47) months of actual incarceration.

Mr. Hoover previously submitted multiple administrative requests for compassionate release, the most recent of which was a formal request for compassionate release submitted on September 23, 2020. (ECF No. 207-2, at 4.) The Warden denied Mr. Hoover's administrative request on October 1, 2020. (*Id.*) The denial stated that Mr. Hoover's "concerns about being potentially exposed to, or possibly contracting, COVID-19" did not warrant early release. (*Id.*) However, since that time Mr. Hoover has submitted a myriad of emails and requests for administrative remedies via informal resolution forms, to BOP health professionals and staff detailing his medical plights. (*See e.g.*, ECF No. 267-5, at 53–55, 57–59, 66–67, 88–89; ECF No. 290-1, at 1; ECF No. 305-4.)

On December 1, 2020, Mr. Hoover filed his first Motion for Compassionate Release in this Court. (ECF No. 207.) In that Motion Mr. Hoover asserted various medical conditions that he argued, in the context of his custodial detention and COVID-19, qualified as "extraordinary and compelling" reasons warranting a sentence reduction. (*See id.*) Specifically, Mr. Hoover stated that he had chronic health conditions, including hypertension, high cholesterol, abdominal pain, a history of deep vein thrombosis and pulmonary embolism, and borderline obesity. (*Id.* at 5–6.) Mr. Hoover also argued that consideration of the § 3553(a) factors supported release, primarily because he has been committed to his rehabilitation while in prison and he can no longer commit the type of offense to which he pled guilty because he lost his medical license. (*Id.* at 9.) After full briefing on the matter and a hearing, the Court denied his prior Motion on February 11, 2021.

In his present Renewed Motion for Compassionate Release,[2] filed on March 9, 2022, Mr. Hoover again argues that there are extraordinary and compelling reasons for release because he has a variety of serious medical conditions that need immediate attention and the prison policies in response to the COVID-19 pandemic have caused significant delays in him getting proper and adequate treatment. (ECF No. 267.) In other words, Mr. Hoover argues that he has serious physical and medical conditions that diminish his ability to provide self-care in a correctional facility, particularly because of the precautions the BOP has implemented in light of the pandemic. (ECF Nos. 267, 290.) Mr. Hoover also alleges that the BOP has been deliberately indifferent to his various medical issues, which he argues is evidenced by and detailed in his *Bivens* action, filed in federal court in West Virginia, against FCI Morgantown. (ECF No. 267.)

After a flurry of additional filings from Mr. Hoover, the Government submitted an Omnibus Response to Defendant's Motions arguing that compassionate release was again not warranted in this case since he has not presented extraordinary and compelling circumstances that warrant release. (ECF No. 280.) According to the Government, because of the wide availability of access to vaccines there is no serious risk of contracting a severe case of COVID-19 that Mr. Hoover cannot mitigate, even if Mr. Hoover chooses to refuse the vaccine. Further, the Government argues that Mr. Hoover has had adequate access to health care facilities and sick visits

---

[2] Mr. Hoover filed a Renewed Motion for Compassionate Release Based upon New Circumstances on March 3, 2022. (ECF No. 267.) However, since then Mr. Hoover has filed various papers in support of his Motion including a Motion to Compel Discovery (ECF No. 268), a Motion for Special Relief to Serve Other Parties re. Renewed Motion for Compassionate Release Based upon New Circumstances (ECF No. 269), a Motion to Proceed in Forma Pauperis (ECF No. 271), a Motion to Update Relevant Events Occurring after Recent Filing re. Motion for Release/Reduced Sentence (ECF No. 275), a Motion to Update Highly Relevant Events Occurring After Recent Update of Events Mentioned 03/17/2022 to Update Motion for Release/Reduced Sentence (ECF No. 282), a Motion for the Court to Clarify Due Process Issues (ECF No. 287), a Motion for Emergency Expedited Ruling on Motion for Release/Reduced Sentence (ECF No. 291),  and a Motion to Update Certain Recent Evolving Relevant Facts to Renewed Motion for Compassionate Release Based upon New Circumstances (ECF No. 306).

For simplicity, the Court will refer to the filings related to Mr. Hoover's main compassionate release claims and subsequent follow up filings relating to his medical situation (ECF Nos. 267, 269, 275, 282, 291, 306) collectively as "Renewed Motion."

have been promptly undertaken throughout his time at FCI Morgantown, evidenced by at least six (6) visits to health facilities in the month of March 2022 alone, according to his medical records. (*Id.*) Lastly, the Government argues that even if the Court finds that Mr. Hoover has presented extraordinary and compelling reasons for release, the § 3553(a) factors still weigh against release.[3]

Because Mr. Hoover filed various Motions updating the Court on his medical situation, which appeared significant on its face, as well as a Motion to Clarify Due Process Issues which asked the Court to clarify statements that his former counsel made to him, the Court appointed counsel and requested additional briefing.[4] (ECF No. 296.) On May 2, 2022, appointed counsel for Mr. Hoover filed a Notice stating that he reviewed the Court's prior Opinion denying Mr. Hoover's first Motion for Compassionate Release and all subsequent filings in the matter as well as Mr. Hoover's medical records up to May 2, 2022, and he determined that no supplemental filing was needed as nothing in Mr. Hoover's medical situation had changed since the time of the Court's previous consideration aside from a slight increase in Mr. Hoover's BMI calculation. (ECF No. 297.) The Court then requested that the Government file a supplemental omnibus response

---

[3] The Government also requests that the Court deny as moot two other Motions filed by Mr. Hoover. In Mr. Hoover's Motion for Special Relief to Serve Other Parties, Mr. Hoover requests that the Court ensure that his filings are served to the AUSA's Office because he has no funds to do so. In its response the Government requests that the Motion be denied as moot since it has received his filings. (ECF No. 280.) Accordingly, the Court will DISMISS this Motion at ECF No. 269 as MOOT.

In Mr. Hoover's Motion to Compel Discovery he requests that all pharmacy records, health service treatment records, release forms signed by Mr. Hoover, administrative decisions rendered by Mr. Hoover and addresses of people who work at Morgantown FCI be provided to him. The Government contests the right to discovery and the authority of this Court to order that such discovery be produced and argues that in any event it should be mooted because the Government has provided all of the medical records that it received to Mr. Hoover. (ECF No. 280.) Because the Court determines that Mr. Hoover has already received all pertinent medical records in this matter, *see* ECF No. 292, the Court will also DISMISS this Motion at ECF No. 268 as MOOT.

[4] Because the Court has appointed counsel to Mr. Hoover, *see* ECF No. 289, and the Court determines that Mr. Hoover's appointed counsel is in a better and more appropriate position than the Court to address the concerns raised in Mr. Hoover's Motion for the Court to Clarify Due Process Issues at ECF No. 287, the Court will now DISMISS this Motion at ECF No. 287 as MOOT.

addressing any issues raised by Mr. Hoover's additional filings. (ECF No. 298.) The Government did so on May 16, 2022. (ECF No. 303.)

However, on June 14, 2022, Mr. Hoover again filed another Motion updating the Court on his medical condition and alleging, among other things, that he only had access to emergency medical care during eight (8) hours of the day. (ECF No. 306.) The Court ordered the Government to respond and specifically address the adequacy and availability of emergency services at FCI Morgantown. (ECF No. 307.) The Government again responded on June 27, 2022 contesting Mr. Hoover's claim and asserting instead that the health services at FCI Morgantown are staffed for twelve (12) hours on the weekdays and ten (10) hours on the weekends, and that every inmate has access to a clinical director who is on call 24 hours a day, 7 days a week to respond to medical emergencies. (ECF No. 309.)

The Court then scheduled a telephonic status conference with counsel for Mr. Hoover and counsel for the Government to discuss the status of the filings and whether counsel for Mr. Hoover intended to submit any updated filings. (ECF No. 314.) At the status conference, counsel for Mr. Hoover reaffirmed that he did not intend to file any additional filings.

The matter is now ripe for disposition.

## II.    <u>LEGAL STANDARD</u>

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling

reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

## III.    DISCUSSION

After considering the relevant factors, the Court determines that though Mr. Hoover has not submitted a renewed request with the BOP that details with precision all of his current medical ailments, the purposes of exhaustion have been fulfilled such that the Court can properly consider his Renewed Motion before it. Additionally, the Court finds that the combination of Mr. Hoover's medical conditions and the ongoing COIVD-19 pandemic do appear to establish an "extraordinary and compelling" reason for release. However, in considering the § 3553(a) factors and the at least adequate level of care Mr. Hoover is receiving for his illnesses, the Court concludes that a reduction of Mr. Hoover's sentence would be inconsistent with the purposes of sentencing and unwarranted. Accordingly, compassionate release is inappropriate at this time.

### A.    Administrative Exhaustion

In order to consider the merits of the Mr. Hoover's Motion, the Court must first determine whether Mr. Hoover has complied with 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement. Prior to petitioning a court for relief under § 3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust the BOP's administrative remedies, or (2) wait thirty (30) days from the date the administrative request was filed with the warden. § 3582(c)(1)(A). The Third Circuit has confirmed that either of § 3582(c)(1)(A)'s options (acting independently) are sufficient to satisfy the exhaustion

7

requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (rejecting the argument that a defendant is required to completely exhaust the administrative remedy process if the warden denies a defendant's request within thirty (30) days of receiving it, primarily because "the statute states that the defendant may file the motion [before a district court] thirty days after the warden receives his request"). Administrative exhaustion is mandatory, and a court may not grant compassionate release if exhaustion has not occurred, even if the Government does not contest the defendant's asserted exhaustion. *United States v. Davidson*, No. 16-139-2, 2020 WL 4877255, at *5 & n.4 (W.D. Pa. Aug. 20, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). However, to properly exhaust, a defendant's administrative request for release need not be a "mirror image" of her motion for compassionate release. Instead, as long as the record before the court demonstrates that "the BOP [had] the first opportunity to consider" the key reasons for release "the purposes of exhaustion have been fulfilled." *Id.* at *13. Further, particularly when a defendant, in a subsequent motion for compassionate release, raises concerns regarding the deterioration of a medical condition that the BOP is aware of, the court need not mandate that the defendant restart the process of administrative exhaustion. *See United States v. Iezzi*, No. 2:17-CR-00157, 2021 WL 5832767, at *4 (W.D. Pa. Dec. 9, 2021) (*citing United States v. Smith*, 464 F. Supp. 3d 1009, 1017–18 (N.D. Iowa 2020) ("Asking [the defendant] to restart his [compassionate release] process because of the COVID-19 pandemic would be tantamount to telling inmates that they must restart the process each time their condition deteriorates. That, clearly, is not the purpose of the statute.")).

Here, the Court concludes that Mr. Hoover has satisfied § 3582(c)(1)(A)'s exhaustion requirement based on the "thirty-day option" because the BOP has had more than thirty (30) days to consider the claims Mr. Hoover raised in his prior administrative request and the claims he now

brings before the Court. Though the last formal administrative request for release Mr. Hoover submitted to the Warden of FCI Morgantown was on September 23, 2020, *see* ECF No. 207-2, at 4, and Mr. Hoover now raises a variety of newer and emergent conditions that were not directly raised in this prior request for release to the BOP, the Court determines that the BOP was on and has been on sufficient notice of these conditions such that review and consideration of the health issues Mr. Hoover raises in his Renewed Motion is appropriate.

First, most of the conditions Mr. Hoover presents to the Court as extraordinary and compelling reasons for release "existed before [his] incarceration." (ECF No. 290.) And many of the conditions Mr. Hoover raises in his Renewed Motion were also raised in his prior Motion including, to name a few, deep vein thrombosis and pulmonary embolism, heart disease and stroke risk factors from his father, seizures, and Crohn's disease. (*See e.g.*, ECF Nos. 207, 290) Thus, the BOP has been aware of these conditions for years now and has considered many of the conditions in denying Mr. Hoover's 2020 administrative request. (*See* ECF No. 207-2, at 3 (addressing Mr. Hoover's cervical spinal stenosis, complex regional pain syndrome, high blood pressure, high cholesterol, acid reflux and other conditions in denying his request).) Second, as noted above, Mr. Hoover has submitted various emails and requests for administrative remedies to and had various sick visits with BOP health professionals and staff, and his medical records reflect that he has had frequent visits with the medical facilities over the course of the last two years, including, by the Court's estimation, at least five (5) encounters with health professionals in the month of March 2022 and at least seven (7) encounters in the month of April 2022 and at least eight (8) encounters in the month of May 2022. (*See e.g.*, ECF No. 267-5, at 53–55, 57–59, 66–67, 88–89; ECF No. 290-1, at 1; ECF No. 305-4; ECF Nos. 281, 304, 310 (Sealed Medical Records).) Based on this extensive engagement between Mr. Hoover and the FCI Morgantown health facilities, the Court

is satisfied that the purpose of exhaustion, namely, allowing the BOP the first opportunity to review a defendant's reasons for release, have been met in this case.[5]

Accordingly, since the Court determines that the BOP has had more than thirty (30) days to consider Mr. Hoover's overall medical concerns, including consideration of those concerns in the context of the COVID-19 pandemic, Mr. Hoover has administratively exhausted, and the Court will proceed to review of his Renewed Motion.

### B.   **"Extraordinary and Compelling" Reasons**

Next, the Court must determine whether Mr. Hoover's medical conditions rise to an "extraordinary and compelling" level such that consideration of release from prison would be permitted by § 3582(c)(1)(A)(i). The Court determines that Mr. Hoover's medical conditions as a whole do establish extraordinary and compelling reasons that could warrant release.

Section 3582 does not define the phrase "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i) in a policy statement contained in § 1B1.13 of the U.S. Sentencing Guidelines Manual (the "Guidelines"), but the Commission has not updated the policy statement since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. Apr. 1, 2020).

In *United States v. Andrews*, the Third Circuit explained that given the lack of an updated applicable Policy Statement defining "extraordinary and compelling," "the existing policy

---

[5] The Government does not contest exhaustion, though it does note that Mr. Hoover has not submitted a subsequent administrative request with the BOP since his last request in 2020. (ECF No. 280, at 8.)

statement is not applicable—and not binding—for courts considering prisoner-initiated motions"
for compassionate release—adopting the position that all but one other Courts of Appeals to
address the issue have taken. 12 F.4th 255, 259 (3d Cir. 2021). However, "although the policy
statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling
reasons." *Id.* at 260. This is because "Congress legislates against the backdrop of existing law,"
and thus, by "reenact[ing] the compassionate-release statute without any alterations to the phrase
'extraordinary and compelling reasons,'" Congress likely intended the phrase to retain the meaning
that the Sentencing Commission gave it in its pre-First Step Act Policy Statement. *Id.* Thus, in
reviewing this Motion, this Court does not use the provisions of U.S.S.G. § 1B1.13 and its
Application Notes as "an ultimate binding authority" but uses it as a guide in its analysis.

Mr. Hoover relies on the Application Notes to § 1B1.13 of the Guidelines that suggests
that non-terminal medical conditions may constitute extraordinary and compelling reasons if "a
defendant is suffering from a serious physical or medical condition . . . that substantially diminishes
the ability of the defendant to provide self-care within the environment of a correctional facility
and from which he or she is not expected to recover." § 1B1.13, cmt. n.(1)(A)(ii). Mr. Hoover
states that many of his conditions are life-long and that it is impossible for him to receive adequate
care to address these conditions within the BOP facility, allegedly because the BOP refuses to
provide him acceptable treatment for his various ailments.[6]

Here, the Court determines that the combination of Mr. Hoover's medical conditions and
the additional risks that he faces due to the ongoing COVID-19 pandemic, rise to an "extraordinary
and compelling" level under the "non-terminal" option. Mr. Hoover avers that he has chronic
embolism and thrombosis of the veins, seizures, pulmonary fibrosis, fluctuating blood pressures,

---

[6] Mr. Hoover was educated and licensed as a physician, a role that was central to and facilitated his criminal conduct.

fecal/blood incontinence, hearing loss, balance problems, bipolar disorder, and complications from a previous COVID-19 case, among other things. (ECF Nos. 290, 291.) Mr. Hoover also again argues that he has Crohn's disease. (*See* ECF Nos. 232, 290.) More significantly, Mr. Hoover states that he was admitted to the critical care unit of a local hospital on March 12, 2022 with severe chest pains and as a result was diagnosed with severe angina. [7] (ECF No. 275.) He states that he is now confined to a wheelchair and experiences cycles of chest pains and shortness of breath. (*Id.*) Mr. Hoover also briefly addresses the COVID-19 pandemic and argues that because of his medical conditions, he is at a high risk of contracting a severe case of COVID-19, even though he has already previously contracted COVID-19. (ECF No. 305.) Further, he argues that because he has uncontrolled Crohn's flare ups, which the BOP allegedly refuses to treat, he is unable to get the COVID-19 vaccine. (*Id.*)

Mr. Hoover also separately argues that the lockdown conditions imposed by the BOP in response to the pandemic has made it more difficult for him get quick and necessary medical attention and access to various procedures in the BOP facility. As two specific examples, Mr. Hoover claims that a biopsy appointment to remove a skin carcinoma was delayed because of COVID-19 lockdown procedures and that he is not able to get immediate testing and care for his angina and Crohn's flare-ups because of the limited access to health facilities under COVID-19 lockdown procedures.

Lastly, Mr. Hoover makes a variety of allegations that the BOP purposefully and with deliberate indifference has refused to provide emergency and other medical services to him in

---

[7] Mr. Hoover filed his first Renewed Motion on March 9. 2022, *see* ECF No. 267, however subsequently Mr. Hoover was admitted to the hospital with chest pains, and he filed additional Motions updating the Court on his condition, specifically in light of this hospitalization. (*See* ECF Nos. 275, 282, 291.)

response to his severe medical conditions, and that this further establishes an extraordinary and compelling reason for release. (*See* ECF Nos. 267, 275, 282, 291, 300, 305.)

By contrast, the Government argues that Mr. Hoover's medical conditions do not rise to an extraordinary and compelling level, particularly because he has access to the COVID-19 vaccines but has declined it, and the BOP is and has been following all necessary protocols to stop the spread of COVID-19 in the facility. (*See* ECF No. 280.) The Government maintains that Mr. Hoover is unable to establish that he has extraordinary and compelling reasons for release when he refuses to receive the COVID-19 vaccine, or at a minimum, his refusal significantly amplifies the risk. (ECF No. 303.) Further, the Government contends that Mr. Hoover has had access to health care and related emergency services as needed for his various medical issues, contrary to his assertions. (ECF Nos. 280, 303, 309.)

Based on the record before it, the Court determines that Mr. Hoover's medical conditions, do reach a level of seriousness such that they establish extraordinary and compelling reasons that could warrant release. However, the level of seriousness is substantially mitigated by the wide availability of COIVD-19 vaccines and the health care Mr. Hoover has received and has access to at FCI Morgantown.

First, while the Court agrees with the Government's contention that Mr. Hoover's decision to decline the COVID-19 vaccine makes his claim that he is at a higher risk of contracting a severe case of COVID-19 far less compelling, the Court determines that the severity of Mr. Hoover's stated medical diseases and conditions in the BOP context are still serious medical conditions that substantially diminish his ability to provide self-care within the BOP context. Mr. Hoover's medical records reflect that he suffers from a significant number of physical and mental ailments including obesity, hyperlipidemia, bipolar disorder, epilepsy/seizure disorder, hypertension,

angina, chronic embolism and thrombosis of vein, gastro-esophageal reflux disease, hemorrhoids, and various muscular tears and ruptures. (*See* ECF No. 304, at 64–67.) He also alleges that he has Crohn's, and though his medical records do not appear to reflect a diagnosis of such, the records do demonstrate that Mr. Hoover has suffered a variety of gastrointestinal issues. (*Id.*) Further, Mr. Hoover's most recent emergency situation, which resulted in a 3-day hospitalization, demonstrates to the Court that Mr. Hoover indeed has serious and ongoing medical concerns. (*See* ECF No. 280, at 5.)

However, the Court also acknowledges that Mr. Hoover's risk of contracting a severe case of COVID-19 is mitigated by the wide availability of vaccines. *See e.g.*, *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843–44 (D. Ariz. 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances."). Mr. Hoover has not provided any concrete evidence or medical records establishing that he is unable to get the COVID-19 vaccine and the Court notes that there is no evidence in the record that persons who experience Crohn's flare ups are unable or ineligible to get the COVID-19 vaccines nor that, as Mr. Hoover contends, the "vaccine can and does cause flares of autoimmune diseases." (ECF No. 290, at 25.) Rather, based on publicly-available information from reliable sources, it appears the vaccine is considered safe and effective for persons experiencing Crohn's flare ups.  *See* Crohn's & Colitis Foundation, *COVID-19 Vaccines: Position Statements*, https://www.crohnscolitisfoundation.org/coronavirus/vaccine-position-statements#:~:text=There%20is%20no%20concern%20of,normal%20immune%20response%20to%20vaccines ("Non-live vaccines are considered safe for IBD patients regardless of the type of IBD therapy the patient is receiving. Patients with IBD can mount normal immune response to vaccines

. . . Now that COVID-19 vaccinations are widely available, the Foundation supports eligible IBD patients getting vaccinated."); Centers for Disease Control and Prevention, *Inflammatory Bowel Disease (IBD)*, https://www.cdc.gov/dotw/ibd/index.html (recommending that those with Crohn's follow CDC guidelines for COVID-19 prevention, which includes getting vaccinated).[8] Thus, it appears that nothing is preventing Mr. Hoover from receiving the COVID-19 vaccine aside from his own, largely unsupported and speculative concerns that it may cause more Crohn's flare ups. However, these concerns do not equate to him, as he insists, "being forced not to receive the COVID-19 vaccine," as there is no evidence in the record before the Court that he was told not to receive the vaccine or that he could not receive the vaccine. (ECF No. 290, at 26.) And, as the Court will discuss in further detail below, there is no evidence in the record before the Court to substantiate Mr. Hoover's allegations that any health professionals at the BOP refused to provide Mr. Hoover with proper and necessary treatment for any of his medical needs, including his alleged Crohn's flare ups. (*See e.g.*, ECF No. 281-3, at 186 (specifically stating that a doctor evaluated Mr. Hoover based on his allegations of Crohn's).) Accordingly, this is not a situation wherein he has demonstrated a "specific medical risk associated" with the vaccine. *See United States v. Salazar*, 118CR00180NONESKO, 2022 WL 138530, at *5 (E.D. Cal. Jan. 14, 2022). Thus, his asserted risk of contracting a severe case of COVID-19 is made significantly less compelling.

---

[8] The Court also notes that according to Mr. Hoover's medical records, he has received the flu vaccine, despite his refusal of the COVID-19 vaccine. (ECF No. 281-3, at 115.) By the Court's estimation, the record does not reflect that there is any discernible difference between the COVID-19 vaccine and the flu vaccine with respect to Mr. Hoover's claim that vaccines "can . . . cause flares of autoimmune diseases." (ECF No. 290.) While, as noted, the Court has found no evidence to support this claim, even assuming it is true, Mr. Hoover has not explained his inconsistent decisions to receive the flu vaccine but refuse the COVID-19 vaccine, particularly since at least two COVID-19 vaccines have been fully approved and authorized by the CDC. *See* Centers for Disease Control and Prevention, *Pfizer-BioTech COVID-19 Vaccine (also known as COMIRNATY) Overview and Safety* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (stating that the Pfizer vaccine received approval on August 2, 2021); Centers for Disease Control and Prevention, *Moderna COVID-19 Vaccine (also known as Spikevax): Overview and Safety* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (stating that the Moderna vaccine received approval on January 31, 2022).

In addition, it appears to the Court, based on the medical records before it, that Mr. Hoover has had significant and frequent interactions with the health facilities at FCI Morgantown. As stated above, based on a review of his medical records, Mr. Hoover has had at least five (5) encounters with health professionals in March of 2022, at least seven (7) encounters in April of 2022 and at least eight (8) encounters in May of 2022. According to the declaration, provided to the Court by the Government,  from Ms. Ellen Hoffman, the Health Services Administrator at FCI Morgantown, FCI Morgantown provides "immediate medical care for inmates in emergency situations" and the Health Services Department is staffed for twelve (12) hours a day on weekdays and ten (10) hours a day on weekends. Further, Ms. Hoffman states that there is a Clinical Director on site "24  hours a day, seven days a week" and if there is a medical emergency during the hours when the Health Services Department is closed, the medical provider on call and/or the Clinical Director will be contacted and will direct that the inmate be transported to the hospital for care, when necessary. (ECF No. 309, at 4–6.) Thus, though Mr. Hoover avers that he has been denied regular access to medical and emergency services, the record before the Court reveals the opposite. Mr. Hoover has had more than adequate access to health professionals at FCI Morgantown, and actually has been able to access medical care on average at least once a week. Thus, the Court is satisfied that there are procedures and protocols in place at the facility that can, and as it appears do, adequately address Mr. Hoover's myriad of medical conditions.

Nevertheless, given the breadth and severity of his stated conditions, many of which are reflected in and confirmed by his medical records, the Court determines that Mr. Hoover has established that he has serious medical conditions from which he is not expected to recover and that do substantially diminish his ability to provide self-care in the BOP facility. However, the Court also determines that while Mr. Hoover gets over the line in establishing that his medical conditions

amount to an extraordinary and compelling reason for relief, the severity of his medical conditions appears to be quite substantially mitigated by his consistent and more than satisfactory access to medical treatment by the BOP facility, and access to the widely-available COVID-19 vaccines at FCI Morgantown.

But even though the Court determines that Mr. Hoover has established an extraordinary and compelling reason for release, the analysis does not end there. The Court must next consider the § 3553(a) factors.

### C.  The § 3553(a) Factors

In order to determine whether release is appropriate the Court must also consider the factors set forth in § 3553(a). Specifically, "in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D.N.Y. Apr. 22, 2020) (citation omitted). The determination of "whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the [district court]." *United States v. Jones*, No. 12-000038, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020)). That discretion includes the district court's authority to consider the length of the defendant's original custodial sentence, including the portions served and remaining, when weighing the § 3553(a) factors. *Pawlowski*, 967 F.3d at 330–31.

Here, the Court again concludes that a reduction of Mr. Hoover's sentence is not appropriate at this time because the § 3553(a) factors substantially outweigh any extraordinary and compelling reasons for release. In particular, the § 3553(a) factors, (1) the nature and

circumstances of the offense and the history and characteristics of the defendant and (2) the need

for the sentence imposed to reflect the seriousness of the offense, substantially weigh against Mr.

Hoover's release.

First, Mr. Hoover has served less than 50% of his 136 month in-custody sentence. He has

a significant amount of time left on his sentence, and his expected release date is March 20, 2027.

Second, Mr. Hoover was convicted of very serious and destructive conduct that affected many

people in the community. As the Court noted in its prior Opinion denying Mr. Hoover's first

Motion for Compassionate Release, Mr. Hoover was a medical doctor who, rather than using his

expertise to better the community, used his license to prey on the drug addictions of hundreds of

people essentially fueling the opioid epidemic in this District. (*See* ECF No. 232, at 12–13

(detailing Mr. Hoover's "pill mill" operation and subsequent Social Security fraud scheme).) The

Court's assessment remains unchanged that the remainder of the sentence is necessary to reflect

that seriousness and to provide just punishment for the offenses. (*Id.*)[9]

Also, as noted, the current record before the Court demonstrates that Mr. Hoover's medical

conditions are not so urgent and serious so as to counterbalance the § 3553(a) sentencing factors.

Though Mr. Hoover suffers from multiple medical ailments, he is receiving at least adequate care

and based on his medical records, those conditions appear well-controlled or treated. Further, while

---

[9] In a filing submitted by the Defendant days before this Opinion was issued, Mr. Hoover, for the first time, stated that his conduct is not illegal in light of the Supreme Court's recent ruling in *Ruan v. United States*, 142 S. Ct. 2370 (2022). (ECF No. 315, at 8–14.) Mr. Hoover provides a lengthy exegesis detailing all of the ways in which his conduct was allegedly legal, and his guilty plea was allegedly not fully knowing and intelligently made. (*Id.*) The Court first notes that Mr. Hoover validly pleaded guilty pursuant to a plea agreement and after a full and complete hearing with the Court wherein he specifically stated that he did commit the illegal conduct as charged and as stated on the record at the plea hearing before this Court. (*See* ECF No. 75.) And, in any event, all of the allegations and averments made by Mr. Hoover in this filing are outside of the scope of a motion for compassionate release and irrelevant to the Court's consideration of whether Mr. Hoover has established extraordinary and compelling reasons for release or whether consideration of the § 3553(a) factors counsel against release. Rather, 28 U.S.C. § 2255 is the appropriate avenue through which Mr. Hoover can challenge an allegedly illegal conviction and/or sentence. *See United States v. Brown*, No. 12-224, 2020 WL 4345077, at *5 (W.D. Pa. July 29, 2020); *United States v. Henderson*, 858 F. App'x 466, 469 n.2 (3d Cir. 2021). Accordingly, the Court will allow Mr. Hoover, via his counsel, to file any appropriate motions addressing any such claims, if appropriate. A separate Order will issue in those regards.

Mr. Hoover indicates that he has completed programs such as RDAP and that he has "taken time to focus on personal growth and rehabilitation" the Court determines that these efforts, while admirable, do not change the continuing necessity of the sentence in this case. (ECF No. 267.)

In sum, Mr. Hoover's non-terminal medical conditions presented on this record, particularly in light of the care he is receiving at FCI Morgantown to address these conditions, do not counsel a reduction in his sentence at this time, and the seriousness of his criminal offenses and the amount of time left on his sentence continue to support the original sentence. In other words, the factors continue to outweigh any extraordinary and compelling reasons that may support release such that compassionate release at this time is unwarranted.

IV.    <u>**CONCLUSION**</u>

The Court has considered the relevant factors set forth in § 3582(c), as well as the applicable policy statements issued by the Sentencing Commission and the factors set forth in § 3553(a). The Court finds that Mr. Hoover's Motion is properly before it and that his medical conditions rise to an "extraordinary and compelling" level. However, the record before the Court also indicates that a sentence reduction is inappropriate at this time because the remainder of Mr. Hoover's incarceration remains necessary to fulfill the purposes of his sentence. Accordingly, the Defendant's Renewed Motion for Compassionate Release and supporting filings at ECF Nos. 267, 275, 282, 291, 306 are DENIED without prejudice subject to its reassertion should circumstances warrant. Additionally, for the reasons stated in this Opinion, Defendant's *pro se* Motions at ECF Nos. 268, 269, 287 are DISMISSED as MOOT without prejudice.

An appropriate Order will issue.

/s Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:   July 20, 2022
cc:      All counsel of record